# AFFIDAVIT

I, Stephen Johnston, being duly sworn, depose and state as follows:

1. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since November 2019. I am currently assigned to a specialized enforcement group, the ATF Firearms Trafficking Group, whose primary mission is to investigate those individuals and groups that are engaged in the commission of federal firearms violations, to include firearms trafficking, Federal Firearms Licensee (FFL) burglaries, and illegal possession of firearms. As an ATF agent I am authorized by law to investigate the purchase, sale, and transfer of firearms, including the investigation of the recordkeeping of such purchases, sales and transfers of firearms to ensure the lawful and accurate documentation of firearms transactions. I am aware, as is described in greater detail below, of the various rules, regulations, and requirements for lawfully obtaining, selling, purchasing or transferring of firearms.

2. The information contained in this affidavit is known to me personally or has been relayed to me by other law enforcement officers, or individuals assisting law enforcement officers, as indicated below. Because this affidavit is intended to show merely that there is probable cause for the requested warrant, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to arrest TYRONE DANSBY for a violation of Title 18, United States Code, Section 1001 (false statements to a federal agent).

## PROBABLE CAUSE

3. On July 31, 2020, ATF Special Agent Eric Frye initiated an investigation into TYRONE DANSBY for possible violations of 18 U.S.C. § 924(a)(1)(A) (false statements to a

federal firearms licensee), 18 U.S.C. § 922(a)(1)(A) (dealing in firearms without a license), 18 U.S.C. § 922(a)(6) (false statement as a material fact to a federal firearms licensee), 18 U.S.C. § 371 (conspiracy), and 18 U.S.C. 922(d)(1) (sale or transfer to a prohibited person).

4. On June 02, 2020, a Morton, Pennsylvania, Police officer arrested S. R. and recovered a Taurus, model G3, caliber 9 mm semiautomatic pistol, bearing serial number ABD465541. An unsuccessful attempt had been made to obliterate the serial number from the firearm by grinding it off. A check of the serial number showed that the firearm was originally purchased by a Philadelphia resident, TYRONE DANSBY, on May 20, 2020, from Tanner's Sport Center, an FFL in Jamison, Bucks County, Pennsylvania.

5. On December 30, 2020, while investigating a shooting, a Reading, Pennsylvania, police officer recovered a Taurus, model G2C, 9mm semiautomatic pistol, bearing serial number ABD55022. An unsuccessful attempt had been made to obliterate the serial number from the firearm by grinding it off. A check of the serial number showed that the firearm was originally purchased on May 13, 2020, by TYRONE DANSBY at Tanner's Sports Center.

6. On September 03, 2020, I met with an employee at Bunker's Gun Shop, an FFL in Warminster, Bucks County, Pennsylvania. The employee stated he remembered selling firearms to TYRONE DANSBY earlier that same day. The employee stated that he remembered DANSBY from previous firearm purchases as well. The employee stated that DANSBY came in with another individual who DANSBY said was his brother. The second individual was described as a black male, taller and heavier set than DANSBY. The employee stated that DANSBY walked into the shop and told the employee that he had $2,000 in cash, and wanted to get four or five 9mm pistols. DANSBY asked the employee about the ammunition capacity of each pistol shown, and said he wanted guns that are able to hold 15 rounds or more. DANSBY

also asked about aftermarket magazines for lower capacity pistols. The employee showed a shotgun to DANSBY, but DANSBY stated that he had no use for a shotgun. DANSBY selected three 9mm pistols for purchase. He paid for the guns with cash; and exchanged cash with his companion during the transaction. DANSBY had large bills, $50 and $100 bills, while the individual with him had $20 bills..

7. Members of ATF Group I researched Pennsylvania State Police firearm purchase records, and discovered that DANSBY had purchased approximately sixty handguns in the Commonwealth of Pennsylvania in the four months between May 4, 2020, and September 12, 2020. Those purchases included a suspicious pattern of repeated purchases of identical firearms; for instance, Dansby bought eight identical SCCY 9mm semiautomatic pistols, and 16 identical Taurus G2/G3 9mm semiautomatic pistols, with the only difference between the firearms being their respective serial numbers.

8. On September 21, 2020, ATF Special Agent Frye and I met with TYRONE DANSBY in Philadelphia. During our meeting we identified ourselves to DANSY as Special Agents of the ATF and advised DANSBY that we were inquiring of his firearm purchases, transfers and possessions. We asked DANSBY why he had purchased so many firearms over the previous few months, starting in May of 2020. DANSBY claimed that he was unaware he had purchased that many guns. DANSBY said that he had a social media account, as well as a YouTube channel, where he conducted and published firearm reviews. DANSBY provided us with the account name of "PYNTYPO," which he said that he used for this purpose. We asked DANSBY if he was still in possession of any of the aforementioned firearms. DANSBY responded that he currently had only one pistol. We asked DANSBY if he knew S.R.. DANSBY said that he did not. We asked DANSBY why one of DANSBY'S firearms was recovered during

S.R's arrest, just thirteen days after DANSBY had originally purchased it. DANSBY said that, after completing his reviews of firearms, he lawfully traded-in or sold the guns at area gun shops, and so S.R. could have obtained the gun somewhere after DANSBY sold or traded it. DANSBY gave us a list of seven area FFLs where he claimed to have traded or sold the firearms. DANSBY listed the following FFLs: Clayton's American Arms in Horsham, Pennsylvania; Tanner's Sports Center in Jamison, Pennsylvania; and Frank's Gun Shop, Founding Father's gun shop, Philadelphia Training Academy, and Delia's Firearms, all in Philadelphia, Pennsylvania.

9. ATF agents researched DANSBY's story. A query of the account name "PYNTYPO" on Instagram revealed an account which appeared to belong to DANSBY; the account profile picture was that of Dansby and the name displayed was "TYRONE DANSBY." Additionally, the Instagram profile offered the ability to send an e-mail to the account "tyronedansby@gmail.com. There were no gun reviews on that Instagram account. A query of the account name "PYNTYPO" on YouTube yielded no results for any such account. The agents were unable to identify a YouTube account associated with DANSBY.

10. I know from my training and experience that FFLs are required by federal law to maintain a record of each firearm that they purchase or take in trade. Those records include the make, model, caliber, and serial number of each weapon, and the name, address, and driver's license information of the person selling or trading-in the weapon. I know from prior investigations conducted by fellow agents that the seven FFLs identified by DANSBY adhere to these practices, and that these records are available to agents upon request. We called or visited each of the seven FFL's where DANSBY claimed to have resold or traded the firearms. None had any record of DANSBY selling or trading any of the approximately 60 guns at issue to them as DANSBY claimed. Only one of them, Delia's, had a record of ever buying a gun from

DANSBY, in a transaction for a single firearm in April of 2019, one year before the relevant time period. Based upon my training, experience, and familiarity with this investigation, DANSBY's prior compliance with the required documentation process for firearms transactions shows his current knowledge of those processes for a lawful firearm transfer.

11. I know from my training and experience that when a licensed firearms dealer in Pennsylvania sells a handgun to a customer, the dealer is required by state law to submit an Application/Record of Sale Form (Form SP4-113) documenting details of the transaction to the Pennsylvania State Police. Information as to the make, model, caliber, and serial number of the handgun, the date of sale, and the identity of the customer are then placed in a database that is accessible to law enforcement. I use this database during my investigations and am aware that accurate recordkeeping with in the database is necessary to enforce state and federal firearms regulations. If DANSBY had traded or sold 60 guns to the FFLs he identified, and any of those guns were then sold to customers, that fact would be reflected in the Pennsylvania State Police database. As of the date I write this affidavit, all 60 of the guns that DANSBY bought in Pennsylvania between May and September of 2020 remain in his name. This includes the firearms recovered in the June and December, 2020, arrests described in Paragraphs 4 and 5 above.

12. Based on the facts and circumstances set forth in this affidavit, I submit there is probable cause to believe that TYRONE DANSBY violated Title 18, United States Code, Section 1001 (false statements to a federal agent) when he claimed to have lawfully sold or traded approximately 60 handguns to seven local FFLs when, in fact, it is clear that those transactions never occurred, and two of those guns have been recovered during criminal investigations with their serial numbers partially removed.

/s/ Stephen Johnston
Stephen Johnston
Special Agent
Bureau of Alcohol, Tobacco,
Firearms & Explosives (ATF)

Subscribed and sworn to before me this
12th day of February, 2021

Henry S. Perkin
Digitally signed by Henry S. Perkin
DN: cn=Henry S. Perkin, o=U.S. Courts, ou,
email=judge_henry_perkin@paed.uscourts.gov,
c=US
Date: 2021.02.12 16:03:01 -05'00'

HONORABLE HENRY S. PERKIN
United States Magistrate Judge